Filed 8/14/26  P. v. Torres CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B347614 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 25DWCF00150) |
| v. | |
| ARMANDO TORRES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph Porras, Judge.  Affirmed.

Jennifer Peabody and Richard B. Lennon, under appointments by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Stephanie C. Brenan and Nancy Lii Ladner, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

A jury convicted Armando Torres of felony evasion of a peace officer and misdemeanor driving under the influence. The jury found true the aggravating circumstance that Torres's felony evasion involved a threat of great bodily harm. The trial court sentenced him to the upper term of three years. Torres challenges the trial court's imposition of the upper term. He contends that the threat of great bodily harm is an element of felony evasion and substantial evidence did not support the aggravating circumstance. We find no error and affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

In April 2025, the People charged Torres with felony evasion of a peace officer (Veh. Code, § 2800.2; count 1) and misdemeanor driving under the influence (*id.*, § 23152, subd. (a); count 2).[1] The information alleged as a circumstance in aggravation that count 1 involved a threat of great bodily harm. (Cal. Rules of Court, rule 4.421(a)(1)).[2] The case was tried to a jury.

---

[1] Further undesignated statutory references are to the Vehicle Code.

[2] Further undesignated rule references are to the California Rules of Court.

***The Evidence At Trial***

Consistent with the standard of review, we summarize the evidence in the light most favorable to the judgment.[3]  (See *People v. Virgil* (2011) 51 Cal.4th 1210, 1263.)

On February 9, 2025, at around 11:30 p.m., officer Derrick County was patrolling Florence Avenue in the City of Bell when he saw a white car "in the number one lane make an abrupt turn, cross all lanes of traffic, and proceed northbound" at an intersection.  "[S]eeing that the vehicle was traveling at a high rate of speed and the pedestrians that are still out coming home at night," County activated his lights and siren.  The driver did not stop.  The vehicle was traveling over 60 miles per hour in a 25 mile-per-hour residential zone, left the ground as it hit speed bumps, and ran two or three stop signs.  At one point, a pedestrian crossed the street, causing the car to slow.

County requested assistance from other available units.  Officer Carlos Marroquin responded and took over the pursuit as the primary pursuer.  Marroquin first encountered the vehicle "driving at [him] or towards [him] at a high rate of speed with its lights off."  Throughout the pursuit, the vehicle consistently sped, repeatedly ran red lights, drove with its headlights off, drifted into intersections when making turns at high speed, and crossed the center median to drive on the wrong side of the road.

When the car entered the City of Huntington Park, officers "backed off" in the downtown district "where it's heavily populated due to shopping and restaurants."  A police helicopter began broadcasting its visual observation of the vehicle to

---

[3]      The jury implicitly rejected Torres's testimony that three men carjacked his vehicle and led police on a pursuit while he remained in the backseat.

pursuing officers. Officers then went "into tracking mode," in which they "downgrade[d] [their] lights and sirens" to discourage the driver from speeding or driving erratically. Marroquin testified that officers backed off the chase and relied on the helicopter's instructions to track Torres's vehicle because Torres "was driving way too fast. I wasn't going to do all that and put myself in danger."

The helicopter lost sight of the vehicle after it went under a freeway overpass. All units went to the area. County drove to the location and positioned his patrol car about nine to ten feet in front of the vehicle to get it to stop. He made eye contact with Torres and saw his face. After a car waiting in a left-turn pocket moved out of the way, Torres turned left and continued northbound. A car drove up in the next lane, blocking County from continuing to follow Torres.

Other officers continued pursuing the vehicle until the helicopter broadcast that Torres had left the car and was fleeing on foot. The car continued to roll down the street at about five miles per hour. It struck a parked car, a pole, and a tree before coming to a stop. Officers apprehended Torres soon after. The entire pursuit took 15 to 20 minutes across four cities, totaling 17.2 miles.

### Verdict and Sentence

The jury found Torres guilty on count 1 for felony evasion and count 2 for misdemeanor driving under the influence. The jury also found true that the felony evasion involved a threat of great bodily harm within the meaning of rule 4.421(a)(1). At sentencing, the trial court imposed the upper term of three years on count 1 and a concurrent 180-day sentence on count 2.

Torres timely appealed.

4

**DISCUSSION**

## I.    Senate Bill No. 567 and Penal Code Section 1170

As amended by Senate Bill No. 567 (2021–2022 Reg. Sess.), Penal Code section 1170 makes the middle term in a sentencing triad the presumptive sentence and permits a trial court to impose the upper term only "where there are aggravating circumstances in the crime and the defendant has either stipulated to the facts underlying those circumstances or they have been found true beyond a reasonable doubt." (*People v. Flores* (2022) 75 Cal.App.5th 495, 500, disapproved on other grounds by *People v. Lynch* (2024) 16 Cal.5th 730; see Pen. Code, § 1170, subd. (b)(2).) A single aggravating circumstance found true by the jury renders a defendant eligible for the upper term. (*People v. Black* (2007) 41 Cal.4th 799, 813 (*Black*).) As relevant here, rule 4.421(a) lists circumstances in aggravation, including when the crime involved the threat of great bodily harm.[4]

## II.    The Threat of Great Bodily Harm Under Rule 4.421(a)(1) Is Not An Element of Felony Evasion

Torres contends that the trial court erred by imposing the upper term because the threat of great bodily harm is inherent in the "willful and wanton disregard" element of felony evasion. We disagree.

"A circumstance which is an element of the substantive offense cannot be used as a factor in aggravation. [Citation.] A sentencing factor is an element of the offense if the crime as defined by statute cannot be accomplished without performance of the acts which constitute such factor." (*People v. Clark* (1992)

---

[4]    The jury instructions and verdict forms indicate the jury considered whether count 1 involved the threat of great bodily harm.

5

12 Cal.App.4th 663, 666; see also rule 4.420(h) ["A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term."].)

It is a misdemeanor for a person to willfully flee, with the intent to evade, a pursuing peace officer whose vehicle displays a lighted red lamp, sounds a siren, is distinctively marked, and is driven by a uniformed officer. (§ 2800.1, subd. (a).) The offense is a felony when, in addition to the above elements, "the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property." (§ 2800.2, subd. (a).)

In 1996, the Legislature amended section 2800.2 to provide that "a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs." (§ 2800.2, subd. (b).) Subdivision (b) thus "sets forth a definition of conduct that is deemed to be the legal equivalent of willful or wanton disregard for purposes of section 2800.2." (*People v. Laughlin* (2006) 137 Cal.App.4th 1020, 1027–1028; see also *id.* at p. 1028 [§ 2800.2 " 'describe[s] acts that constitute driving in a willful or wanton disregard for the safety of persons or property,' " quoting Legis. Counsel's Dig., Assem. Bill No. 1999 (1995–1996 Reg. Sess.) 8 Stats. 1996, Summary Dig., p. 2231, italics omitted; see Stats. 1996, ch. 420, § 1, p. 2696].)

As our high court explained in *People v. Howard* (2005) 34 Cal.4th 1129 (*Howard*), section 2800.2 "very broadly defines" willful and wanton disregard "to include conduct that ordinarily

would not be considered particularly dangerous."[5] (*Howard*, at pp. 1137, 1138.) For example, "[v]iolations that are assigned points under section 12810 and can be committed without endangering human life include driving an unregistered vehicle owned by the driver (§§ 40001, 12810, subds. (e), (g)(1)), driving with a suspended license (§§ 14601, 12810, subd. (i)), driving on a highway at slightly more than 55 miles per hour when a higher speed limit has not been posted (§§ 22349, subd. (a), 12810, subd. (e)), failing to come to a complete stop at a stop sign (§§ 22450, 12810, subd. (e)), and making a right turn without signaling for 100 feet before turning (§§ 22108, 12810, subd. (e))." (*Id.* at pp. 1137–1138 [concluding felony evasion is not inherently dangerous for purposes of second-degree felony murder rule].)

These traffic violations do not necessarily involve a threat of great bodily harm but committing three or more of them while fleeing or attempting to elude a peace officer satisfies the willful and wanton disregard element of felony evasion. Because felony evasion may be accomplished without any threat of great bodily harm to others, that circumstance is not an element of the crime. The trial court could properly impose the upper term based on the jury's finding on the threat of great bodily harm aggravating circumstance.

---

[5] *People v. Johnson* (1993) 15 Cal.App.4th 169, which Torres cites in support of his position that fleeing from police in wanton disregard necessarily includes "the possibility of massive physical harm" (*id.* at p. 174), was superseded by the Legislature's 1996 amendment to the statute. (*Howard, supra,* 34 Cal.4th at p. 1137.)

7

**III. Substantial Evidence Supports The Jury's Finding That Torres's Felony Evasion Involved A Threat of Great Bodily Harm Under Rule 4.421(a)(1)**

Torres challenges the sufficiency of the evidence supporting the jury's finding that his conduct posed a threat of great bodily harm. We conclude substantial evidence supports the finding.

**A. Legal principles**

To support the imposition of an upper term, an aggravating circumstance must make the defendant's conduct " 'distinctively worse than the ordinary' " commission of the offense. (*Chavez Zepeda v. Superior Court* (2023) 97 Cal.App.5th 65, 89 (*Chavez Zepeda*); *Black*, *supra*, 41 Cal.4th at p. 817.) "Courts applying that standard have not imagined an abstract, 'ordinary case' to determine whether a finding of an aggravating circumstance[ ] is warranted by the facts of the case. Rather, they have considered whether the manner of the crime's commission was distinctively worse 'when compared to other ways in which such a crime could be committed.' [Citations.]" (*Chavez Zepeda*, at p. 89; see *People v. Moreno* (1982) 128 Cal.App.3d 103, 110 ["The essence of 'aggravation' relates to the effect of a particular fact in making the offense distinctively worse than the ordinary."].) "When appellate courts have reversed an upper-term sentence on the ground that the cited aggravating circumstance did not make the commission of the crime distinctively worse, they have generally concluded that the circumstance at issue was likely to be present in most any instance of the offense or added little to the wrongfulness already inherent in its commission." (*Chavez Zepeda*, at p. 90.)

"When a defendant challenges his conviction or aggravating factor based on insufficiency of the evidence, 'the court must

review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We ' " ' presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " ' [Citation.]" (*People v. Mendez-Torres* (2025) 113 Cal.App.5th 1007, 1015.)

### B.  Discussion

Substantial evidence supported the conclusion that Torres's manner of committing felony evasion involved the threat of great bodily harm and made the offense distinctively worse than the ordinary.  Torres did not merely violate traffic laws while fleeing.  He violated traffic laws fundamental to the safety of others during the pursuit.  He drove well above the speed limit, drifted into intersections, ran multiple stop signs and red lights, crossed the median and drove on the wrong side of the road, and intermittently turned off his headlights to avoid detection.  Officers resorted to tracking Torres with the assistance of a helicopter because he was driving too fast to safely pursue.  Based on these circumstances, a rational jury could conclude that Torres's conduct threatened great bodily harm to others.

Torres contends that the jury's finding was unsupported because no evidence demonstrated that his driving actually threatened the safety of any pedestrians or motorists during the pursuit.  He cites evidence that he slowed down for a pedestrian; the pursuit took place late on Sunday night when people were "unlikely" to be out; and the pursuing officers reduced any risk to themselves by backing off.

9

This evidence does not undermine the jury's finding. That Torres slowed for a single pedestrian does not compel the inference that his conduct did not threaten great bodily harm. The jury could have reasonably concluded from other evidence regarding Torres's rate of speed and disregard for traffic laws that his driving posed a risk to others. (*People v. Cuevas* (1995) 12 Cal.4th 252, 261 ["The focus of the substantial evidence test is on the *whole* record of evidence presented to the trier of fact, rather than on ' "isolated bits of evidence." ' "].)

Further, the record contradicts Torres's argument that it was "unlikely" people were around at the time of the pursuit. Officer County testified that Torres drove over 17 miles through four cities, Torres was speeding while people were "still out coming home at night," and the pursuit continued through at least one "heavily populated" downtown district.[6] He also

---

[6] Torres argues that County's reference to the "heavily populated" district "appeared to be a reference to the normal characteristics of that downtown district as opposed to a statement that there were a large number of people out on the streets at that time." Even if true, this does not compel a different conclusion. The typical characteristics of a location where the pursuit took place were highly relevant to determining whether Torres's driving posed a threat of great bodily harm. The jury could reasonably infer that the risk of a pedestrian or motorist being severely harmed in a generally heavily populated area would be greater than in an area that was generally sparsely populated, even if there was no evidence establishing the actual number of people present at the time. As noted above, the evidence did not indicate that the streets were entirely empty. To the contrary, the testimony at trial indicated there were people and motorists in the areas where the pursuit occurred.

testified that other motorists were on the road during the pursuit. A reasonable jury could infer from this evidence that motorists and pedestrians were present or nearby during the pursuit, and Torres's erratic driving significantly imperiled their safety.

That pursuing officers reduced the risk to themselves by backing off does not aid Torres's argument. According to the officers' testimony, they decided to track Torres via helicopter because Torres's driving made it dangerous to pursue him more closely, and they wanted to discourage his reckless conduct. A jury could reasonably infer from this testimony that the officers backed off *because* the officers perceived that Torres's driving posed a grave risk to their safety, further supporting the jury's conclusion that his conduct threatened great bodily harm. (Cf. *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1373 [referencing trial court finding that " 'entire population of people on the freeway at the time, including the police officers chasing them . . . were put at risk during that particular chase' " as supporting aggravating circumstances of callousness and extreme danger to society].)

Finally, the evidence also supports the jury's conclusion that the circumstances of this case made Torres's conduct distinctively worse than the ordinary felony evasion. Considering that felony evasion occurs even when a defendant commits traffic violations that do not endanger the public, the testimony that Torres drove well above the posted speed limits, ignored red lights and stop signs, turned off his headlights, drove on the wrong side of the road, and engaged in this manner of driving for over 17 miles, permitted the conclusion that Torres's conduct

11

threatened great bodily harm and thus was worse than ordinary felony evasion.

Torres contends that the jury's true finding was improper in the absence of evidence demonstrating what constitutes "ordinary" felony evasion. We disagree. No evidence of a hypothetical "ordinary" commission of the offense was necessary for the jury to make its finding.

*Chavez Zepeda* is instructive. There, the appellate court considered whether the " ' "distinctively worse than the ordinary" ' " test for aggravating factors was unconstitutionally vague. (*Chavez Zepeda, supra*, 97 Cal.App.5th at p. 71.) The court held the test required a factfinder to "[c]ompar[e] the defendant's commission of the offense with other ways in which the same offense has been or may be committed," which did "not require the decision maker to define a single, imaginary fact pattern as the 'ordinary' way of committing the offense." (*Id.* at p. 90.) The court further found juries capable of determining whether the evidence satisfied the test, as the jury instructions provided "additional guidance and explanation . . . in the meaning of the requirement that the aggravating circumstance makes the commission of the offense distinctively worse." (*Id.* at p. 91; see *ibid.* [citing CALCRIM Nos. 3224–3234].)

Here, the jury was instructed on felony evasion with CALCRIM No. 2181. The instruction provided that the People had to prove, among other things, that Torres "committed three or more violations, each of which would make the defendant eligible for a traffic violation point" while "willfully" fleeing from police. The trial court further instructed the jury on the aggravating factor with CALCRIM No. 3224, which defined threat of great bodily harm as "the threat of significant or

12

substantial physical injury . . . that would result in greater than minor or moderate harm."  The instruction also stated: "You may not find the allegation true unless all of you agree that the People have proved that the defendant's conduct was distinctively worse than an ordinary commission of the underlying crime."

Torres does not challenge the sufficiency of these instructions in guiding the jury's determination of the aggravating factor.  Nor does Torres cite authority requiring the jury to consider evidence of the "ordinary" commission of an offense to make this determination or suggest what evidence could have been presented for such purpose.  We therefore reject Torres's contention that the evidence was insufficient to support the jury's finding that Torres's conduct was distinctively worse than the ordinary.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ADAMS, Acting P. J.

We concur:


HANASONO, J.


ASHWORTH, J.*

---

\*     Retired Judge of El Dorado Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.